

FILED
OCT 3 1 2011
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

STATE WIDE ORGANIZING
FOR COMMUNITY EMPOWERMENT,
SIERRA CLUB and
TENNESSEE CLEAN WATER NETWORK,

Plaintiffs,

v.   CIVIL ACTION NO. 3:11-CV-516

NATIONAL COAL LLC,

Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

Comes the Plaintiffs, Sierra Club, State Wide Organizing for Community Empowerment, and Tennessee Clean Water Network and, upon information and belief, state as follow:

### INTRODUCTION

1. Plaintiffs bring this action as a citizen suit under Section 505 of the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1365, against Defendant National Coal LLC (National).

2. The Plaintiffs allege that National has violated and is violating the effluent limitations, and the reporting and monitoring requirements set forth in a National Pollutant Discharge Elimination System ("NPDES") permit issued to National by the State of Tennesseee under Section 402 of the Clean Water Act (CWA), 33 U.S.C. § 1342.

3. Plaintiffs allege National has discharged and is discharging several pollutants, including iron, manganese, total suspended solids, and high and low pH effluent in violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311(a), 1342.

1

4. Plaintiffs seek declaratory and injunctive relief, civil penalties, and attorneys and expert witness' fees.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365 (CWA citizens' suit provision).

6. As required by CWA §505(b)(1)(a), 33 U.S.C. § 1365(b)(1)(a), on August 18, 2011, Plaintiffs sent notice of, and intent to sue for the violations alleged in this complaint by certified mail to Defendant, United States Environmental Protection Agency (EPA), and the Tennessee Department of Environment and Conservation (TDEC). Plaintiffs' notice letter is attached to this Complaint as Exhibit 1.

7. More than sixty days have passed since notice was served and neither EPA nor TDEC has commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA nor TDEC commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), to redress the violations prior to the issuance of the August 18, 2011 notice letter.

8. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District.

## PARTIES

9. National Coal LLC (National) is a Limited Liability Corporation with a principle business office in West Virginia and does business in Campbell County, Tennessee.

10. At all relevant times, National has held a National Pollution Discharge Elimination System ("NPDES") permit for, and has owned and operated Mine 7, located

in Scott and Campbell Counties, Tennessee.

11. Mine 7 is regulated by Surface Mining Permit 3154.

12. Pollutants are discharged from Mine 7 from numerous outfalls in Scott and Campbell counties that are subject to the effluent limitations of TN/NPDES Permit TN0076376.

13. Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 1.3 million members and supporters nationwide and approximately 6000 members who reside in Tennessee and belong to its Tennessee Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in Tennessee.

14. Plaintiff Statewide Organizing for Community eMpowerent ("SOCM") is a thirty-six year-old grassroots citizens' organization with more than two thousand members in Tennessee working for environmental, social, and economic justice. SOCM grew out of the coalfields in East Tennessee and is dedicated to giving its members a voice in the quality of life in their communities. Many of SOCM's members live, work, and recreate in the areas surrounding Jordan Ridge.

15. Plaintiff Tennessee Clean Water Network ("TCWN") is a non-profit corporation headquartered in Knox County, Tennessee, composed of individual and organizational members. TCWN organizes Tennesseans to claim their right to clean

3

water and healthy communities by fostering civic engagement, building coalitions and advancing water policy for a sustainable future. TCWN's vision is for: All Tennesseans to have access to and benefit from clean, free-flowing water; an unstoppable upwelling of Tennesseans exercising their right to protect clean water; Tennessee water quality policy to be a model for the nation, with standards that exceed federal minimums and a commitment to improve those standards for the benefit of all Tennesseans; and protection of the unique beauty of Tennessee's rivers, lakes and open spaces.

16. Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharges of selenium and other pollutants and informational injuries related to Defendant's violations of the monitoring and reporting requirements of its NPDES permit. Plaintiffs' members enjoy hiking, bird watching, and wildlife viewing in and around the areas impacted by Defendant's discharges, including Bear Branch, Lick Fork, Botts Hollow, Capuchin Creek, Incline Hollow, Jeffers Hollow, Little Elk Creek, Drew Branch, Dan Branch and Granny Barnes Branch, and their tributaries, and are harmed by the high levels of pollutants that Defendant is discharging. Plaintiffs' members are concerned for the health of their neighbors and other members of the community whose wells are located downstream of National Coal's Mine 7. Plaintiffs' members are aware of the damage to wildlife that can occur as a result of exposure to Defendant's discharges, and are concerned that the excessive discharges of pollutants from National Coal Mine 7 will have a negative impact on their wildlife viewing experiences. Plaintiffs' members have reduced the time that they spend in and around Bear Branch, Lick Fork, Botts Hollow, Capuchin Creek, Incline Hollow, Jeffers Hollow, Little Elk Creek, Drew Branch, Dan

Branch and Granny Barnes Branch, and their tributaries in order to minimize their exposure to the pollutants discharged from National Coal Mine 7. Plaintiffs' members wish to obtain information related to Defendant's discharges and compliance with its NPDES permit in order to educate themselves and the public, but are inhibited from doing so because of Defendant's persistent monitoring and reporting violations. If Defendant's unlawful discharges ceased and Defendant complied with the monitoring and reporting requirements of its permit, the harm to the interests of Plaintiffs' members would be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future unlawful discharges of selenium and other pollutants and future monitoring and reporting violations.

17. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

18. At all relevant times, National Coal is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

19. TDEC is the agency in the State of Tennessee that administers that State's CWA program, and issues NPDES Permits within the state of Tennessee.

## STATUTORY AND REGULATORY FRAMEWORK

20. The CWA is intended to protect the waters of the United States, including headwater streams. The primary objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

21. One of the six national goals to achieve this objective is the attainment of "water quality which provides for the protection and propagation of fish, shellfish, wildlife and for recreation in and on the water." 33 U.S.C. § 1251(a)(2).

22. In furtherance of that goal, section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the United States Environmental Protection Agency ("EPA") or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

23. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

24. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents of wastewater discharges.

25. Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

26. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water. When technology-based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include stricter water quality based effluent limits ("WQBELs") that reflect water quality standards and criteria. 33 U.S.C. § 1311(b)(1)(C).

27. At all times relevant to this complaint, the Tennessee Department of

Environment and Conservation (hereinafter "TDEC") has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of Tennessee. Permits issued under this program are known as "NPDES" permits.

28. Holders of NPDES permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a quarterly basis. Those reports are called "Discharge Monitoring Reports," or "DMRs."

29. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

30. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA, a WQBEL, and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

31. Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions on data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

32. The monitoring and reporting requirements of a permit, like the discharge limitations, are therefore fully enforceable effluent limitations.

33. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C.

7

Case 3:11-cv-00516-TAV-HBG   Document 1   Filed 10/31/11   Page 7 of 16   PageID #: 7

§ 1365(d).

34. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or "any permit condition or limitation" implementing Section 301 of the CWA in a permit issued under Section 402 of the CWA, shall be subject to civil penalties.

35. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the court may assess a civil penalty of up to $32,500 per day for each violation after March 15, 2004 but before January 12, 2009 and $37,000 per day per violation for each violation occurring after January 12, 2009. See 40 C.F.R. § 19.4.

36. Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

37. At all relevant times, National Coal held NPDES Permit Number TN0076376 to regulate water pollution from its Mine 7.

38. At all relevant times, National Coal held SMCRA Permit 3154 for its Mine 7.

39. NPDES Permit Number TN0076376 places limits on the concentrations of pollutants that National Coal can discharge into Bear Branch, Lick Fork, Botts Hollow, Capuchin Creek, Incline Hollow, Jeffers Hollow, Little Elk Creek, Drew Branch, Dan Branch and Granny Barnes Branch and their tributaries from thirty six (36) outfalls.

40. Above referenced waters are waters of the United States.

8

41. TDEC has classified these streams as supportive of uses for fish and aquatic life, livestock watering and wildlife, recreation, and irrigation.

42. The DMRs that National Coal submitted to TDEC reveal that National Coal has discharged pollutants in excess of the final effluent limitations of its permit from outfalls BF2, DST, DW1, DW2, GB1, GB2, GB3, IH1, JH1, JH2, JH3, JH4A, JH4B, JH5, JH7, LE3, LE5A, LE5B, LE6, LFT-1-1, LFT-2-1, LFT-2-2, LFT-3-2, and SP1.

43. As outlined in Table 1 of the Appendix to the Notice letter attached as Exhibit 1 to this complaint, National Coal has violated the final effluent limitations on the above reference outfalls of NPDES Permit TN0076376 at least 133 times for a cumulative total of 2,585 days of violations.

44. On the basis of National Coal's pattern of exceedances of its effluent limitations in TN/NDPES Permit Number TN0076376 and the absence of any evidence of any meaningful efforts by National Coal to eradicate the cause of the violations, Plaintiffs allege that National Coal is in continuing and/or intermittent violation of the Clean Water Act.

45. Additionally, as outlined in Tables 2 and 3 of the Appendix to the Notice letter attached as Exhibit 1 to this complaint, National Coal has accrued many violations of monitoring and reporting requirements related to its discharges, including the failure to take and report samples representative of the monitored activity, the failure to monitor and report stormwater discharges, and the failure to submit quarterly non-compliance reports.

46. Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on August 18, 2011, to National Coal notifying it that its discharges pollutants in

violation of its permit constitute violations of the Clean Water Act and SMCRA.

47. The NOI also notified Defendant of Plaintiffs' intent to sue Defendant for those violations at the end of the 60-day period required by statute.

48. The NOI was sent by certified mail, return receipt requested, to the following persons: Derrick O'Neal, Attorney-in-Fact for National Coal LLC; CT Corporation Systems, National Coal's registered agent; Lisa P. Jackson, EPA Administrator, Gwendolyn Keyes Fleming, EPA Region 4 Regional Administrator; Robert J. Martineau, Commissioner of TDEC; Paul E. Davis, Director of the TDEC's Division of Water Pollution.

49. After Plaintiffs sent their Notice of Intent to Sue, Plaintiffs obtained National Coal's third quarter 2011 DMRs which revealed that, during the third quarter of 2011 National Coal has discharged pollutants in excess of the final effluent limitations of its permit from outfalls DW1, DW2, LE5A, L23, L32, CC1, JH1, L31, GB2 and JH7, as reflected in Table 4 attached as Exhibit 2.

### FIRST CLAIM FOR RELIEF

(Clean Water Discharge Violations of TN/NPDES Permit Number TN0076376)

50. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 49 supra.

51. National's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the CWA, 33 U.S.C. § 1311.

52. The pollution limits in TN/NPDES Permit Number TN0076376 are "effluent standards or limitations" for purposes of section 505(a)(1) of the Clean Water

10

Act because they are a condition of a permit issued under section 402 of the Act. 33 U.S.C. § 1365(f).

53. Each and every discharge in excess of the effluent limitations in NPDES Permit Number TN0076376 is actionable under section 505(a)(1) of the Clean Water Act. 33 U.S.C. § 1365(a)(1).

54. A violation of an average monthly effluent limitation in a permit is considered to be a violation for each and every day of that month.

55. On information and belief, Plaintiffs allege that National Coal has violated the effluent limitations in NPDES Permit TN0076376 a total of 133 times, amounting to 2,585 cumulative days of violations.

56. Unless enjoined, National Coal will remain in continuing violation of the Clean Water Act.

57. Upon information and belief, Plaintiffs allege that National Coal is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in NPDES Permit Number TN0076376 because National Coal has taken no meaningful action to eradicate the underlying cause of the violations.

58. Furthermore, after sending the notice letter, Plaintiffs learned from Defendant's 3rd quarter 2011 DMRs that National Coal violated the effluent limitations in NPDES Permit TN0076376 at least 28 times, amounting to 445 total violations.

59. In the event National has taken such action in response to Plaintiffs' Notice letter, unless enjoined, there is no reasonable probability that National will not simply return to its old ways once the threat of a lawsuit has passed.

11

60. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), National Coal is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in TN/NPDES Permit Number TN0076376.

**SECOND CLAIM FOR RELIEF**
(Clean Water Stormwater Monitoring/Reporting Violations of NPDES Permit TN0076376)

61. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 60 supra.

62. NPDES Permit TN0076376 and 40 C.F.R. § 122.44(i) contain annual reporting and monitoring requirements for stormwater discharges.

63. Permit TN0076376 specifically requires that samples of pH, Oil, Grease, and Total Suspended Solids from stormwater must be reported on DMRs.

64. National Coal has not reported stormwater monitoring on DMRs in any year since at least 2007.

65. Failure to submit a DMR constitutes an ongoing violation for each day, and for each parameter listed in the applicable NPDES permit, and penalties accrue per day and per limit until the violations cease.

66. National Coal has violated Permit TN0076376 every day since 2007, as outlined in Table 2 of the Appendix of the Notice letter attached as Exhibit 1.

67. Unless enjoined by this Court, National will remain in continuing violation of the CWA.

68. On information and belief, Plaintiffs allege that National is in continuing and/or intermittent violation of the CWA as a result of its lack of monitoring and reporting as required by Permit TN0076376.

12

69. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), National is liable for civil penalties of up to $37,500 per day of violation for its failure to monitor and report stormwater discharges.

### THIRD CLAIM FOR RELIEF
(Clean Act Water Noncompliance Reporting of TN/NPDES Permit Number TN0076376 Violations)

70. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 69 supra.

71. Permit TN0076376 requires quarterly reporting of non-compliance, including "all information concerning steps taken, or planned, to monitor, reduce, eliminate, and prevent recurrence of the violation and, if not corrected, the anticipated time the violation is expected to continue."

72. Upon information and belief, although National Coal has had repeated discharge violations, it has never submitted a quarterly non-compliance report.

73. Each failure to submit a non-compliance report constitutes an ongoing violation and penalties may accrue each day and for each parameter until the violations cease.

74. Upon information and belief, National Coal has accrued 17 violations for failure to submit noncompliance reports. These violations are listed in Table 3 of the Appendix to the Notice letter attached as Exhibit 1.

75. After sending the notice letter, Plaintiff obtained the third quarter 2011 DMRs and, although National Coal has had repeated discharge violations, it failed to submit a quarterly noncompliance report for the third quarter of 2011.

### RELIEF REQUESTED

13

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

(1). Declaring that National has violated and is in continuing violation of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342;

(2). Enjoining National from operating its facilities in such a manner as will result in further violations of the effluent limitations in NPDES Permit TN0076376;

(3). Ordering National Coal to immediately comply with all effluent limitations, monitoring and reporting requirements, and other terms and conditions of NPDES Permit Number TN0076376;

(4). Ordering National Coal to conduct monitoring and sampling to determine the environmental effects of their violations, to remedy and repair environmental contamination and/or degradation caused by their violations, and restore the environment to its prior uncontaminated condition;

(5). Ordering National to pay appropriate civil penalties up to $37,500 per day for each violation of the CWA, pursuant to Sections 505(a) and 309(d) of the CWA, 33 U.S.C. §§ 1365(a) and 1319(d);

(6). Awarding Plaintiffs' their attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action, pursuant to Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

(7). Granting other such relief as the Court deems just and proper.

Respectfully submitted,

*signature*

Gena Lewis
Law Office of Gena Lewis
P.O. Box 6004
Maryville, TN 37802
Office Phone: (865) 978-6604
Cell Phone: (865) 300-1495
Fax: (865) 978-6605

*signature*

Michael Bernard
Ogle, Elrod & Baril
706 Walnut St., Ste. 700
Knoxville, TN 37902\
Office Phone: (865) 546-1111

*Counsel for:*

Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
865-522-7007 x 102

Sierra Club
85 Second Street, 2d Floor
San Francisco, CA 94105-3441
415- 977-5680

Statewide Organizing for
Community eMpowerment
2507 Mineral Springs Avenue
Suite D
Knoxville, TN 37917
865-249-7488

15

## CERTIFICATE OF SERVICE

I, Michael Bernard, attorney for Plaintiffs, do hereby certify that service of the within and foregoing Complaint was made upon United States Environmental Protection Agency and the Attorney General by mail delivery to:

Lisa P. Jackson
Administrator
USEPA
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Mail Code: 1101A
Washington, DC 20460

Eric H. Holder
U.S. Attorney General
950 Pennsylvania Ave. N.W.
Washington, DC 20530-0001

by hand delivery or by placing the same with proper postage affixed in the U.S. Mail on this the 31st day of October, 2011.

_____
Michael Bernard, Attorney for Plaintiffs